UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-295-GWU

WYNONA M. STRINGER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Wynona Stringer brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

    Impairments). If so, disability is conclusively presumed and benefits are awarded.

 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

  In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Stringer, a 34-year-old former child care worker and order clerk with a high school education, suffered from impairments related to mitochondrial ataxia.[1] (Tr. 14, 18). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 17-18). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered to be totally disabled. (Tr. 19). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.).

---

[1] Ataxia is a condition involving the failure of muscular coordination or an irregularity of muscular function. Dorland's Illustrated Medical Dictionary, 27th Ed., 1988, p. 160-161.

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert James Miller included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as (1) a limitation to simple, unskilled, routine work; (2) the need for a sit/stand option in 30 to 45 minute intervals; (3) an inability to more than occasionally climb ramps or stairs; (4) an inability to ever balance and climb ladders, ropes or scaffolds; (5) an inability to ever perform work above shoulder level; and (6) a need to avoid exposure to dangerous machinery or unprotected heights. (Tr. 66-67). In response, Miller identified a significant number of jobs which could still be performed at the light and sedentary levels. (Tr. 67-68). Therefore, assuming that the vocational factors considered by the expert fairly characterized Stringer's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Feerozeh Jahanshahi examined Stringer and noted diagnostic impression of a neurological disorder, mitral valve prolapse and depression. (Tr. 265). Dr. Jahanshahi opined that the plaintiff would not suffer from any impairment in lifting and carrying. (Id.). The doctor indicated that the claimant would be limited to standing or walking for a total of "perhaps" four

hours a day in intervals of less than one hour. (Id.). Climbing, balancing, stooping, crouching and crawling would be limited to occasional performance. (Id.). The physician reported that the claimant would have no difficulty with reaching, handling, feeling, pushing and pulling. (Id.). The ALJ's findings were essentially consistent with these limitations. The sit/stand option would accommodate the standing and walking limitation indicated by the physician. While the restrictions on stooping, crouching and crawling were not included in the hypothetical question, Social Security Ruling (SSR) 83-14 indicates that these limitations would not be in excess of the requirements of most light and sedentary level jobs. SSR 83-14 at p. 2. Therefore, this report supports the administrative decision.

Dr. Mary Payne (Tr. 267-274) and Dr. Sudhideb Mukherjee (Tr. 306-314) each reviewed the record and indicated that Stringer would be restricted from ever climbing ladders, ropes or scaffolds, from balancing more than occasionally and would need to avoid concentrated exposure to hazards such as heights and dangerous machinery. The hypothetical factors were compatible with these opinions.

Treatment records from Dr. David Blake revealed that testing showed two mutations in the POLG1 gene associated with Mitochondrial Recessive Ataxia Syndrome meaning Stringer had a strong predisposition to developing the condition. (Tr. 227). More severe functional restrictions than those found by the ALJ were not imposed by the physician. (Tr. 225-254, 296-305).

Stringer was seen at the Vanderbilt Medical Center by Dr. Peter Hedera. Dr. Hedera confirmed her diagnosis of mitochondrial recessive ataxia syndrome. (Tr. 340). More severe functional limitations than those found by the ALJ were not imposed by the physician. (Tr. 329-345). Therefore, Dr. Hedera's report does not support the plaintiff''s claim of total disability.

Stringer also was treated by Dr. Kevin Kavanagh at Cumberland Otolaryngology Consultants. (Tr. 346-349). Dr. Kavanagh noted balance problems and a lack of bilateral vestibular response. (Tr. 347). The only activity restrictions identified by the physician were a need to avoid the use of sedatives such as alcohol and the need for the use of night light. (Tr. 346). Thus, this report also does not identify more severe specific physical limitations.

Finally, Stringer also sought treatment for her physical problems at Lake Cumberland Medical Associates where she was seen by Dr. Barry Dixon. Dr. Dixon reported a diagnosis of mitral valve prolapse. (Tr. 259). However, more severe functional restrictions than those found by the ALJ were not noted. (Tr. 255-261). While the ALJ did not find that mitral valve prolapse was a "severe" impairment, the mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Thus, this report also does not support the plaintiff's disability claim.

The ALJ also dealt properly with Stringer's alleged mental problems. Psychologist Gary Maryman examined the plaintiff and diagnosed a depressive

disorder. (Tr. 280). Maryman rated his Global Assessment of Functioning (GAF) at 68. (Id.). Such a GAF suggests only "mild" psychological symptoms according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34. The examiner imposed no restrictions and indicated a reasonably good ability to handle simple and more complicated instructions and tasks, carry out routine work assignments, interact with the general public, co-workers and supervisors, and adjust to routine work pressures and stressors. (Tr. 280-281). Psychologists Jay Athy (Tr. 282) and Christi Bruening (Tr. 315) each reviewed the record and opined that the claimant's mental problems were not "severe." These reports support the administrative denial decision.

Stringer argues that the ALJ erred by failing to find that the combination of her impairments "medically equaled" Section 11.17A of the Listing of Impairments concerning neurological diseases which requires a plaintiff to show disorganization of motor function as described in 11.04B. 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1, § 11.17A. Section 11.04B requires a showing of "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." "For a claimant to qualify for benefits by showing that his unlisted impairment or combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar

9

impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990). However, In the current case, the plaintiff does not describe how the medical evidence shows medical equivalence. Dr. Jahanshahi found a normal gait upon physical examination. (Tr. 265). The medical record reveals that Dr. Hedera noted difficulty with fine motor movements but imposed no functional restrictions. (Tr. 338). Dr. Hedera found no significant postural or resting tremor. (Tr. 340). The doctor did report occasional kinetic tremor when holding a cup. (Id.). Muscle tone was normal throughout. (Id.). Strength was intact. (Id.). Dr. Kavanagh noted dizziness and balance problems but also did not impose specific work-related restrictions. (Tr. 346-349). These findings do not suggest the existence of a totally disabling impairment. Finally, Social Security Ruling 96-6p states that, before an ALJ can make a finding of medical equivalence, a state agency medical consultant must have addressed the issue. Dr. Payne reviewed the record but did not indicate that the plaintiff's condition met or equaled a Listing. (Tr. 267-274). Therefore, the court must reject the claimant's argument.

  Stringer asserts that the ALJ erred by failing to give good reasons for his credibility finding. The ALJ noted that while the plaintiff suffered from ataxia, the record revealed only "mild" symptoms such as difficulty descending stairs and loss of balance when looking straight up or when her vision was blocked. (Tr. 18, 34, 265). The claimant was noted to have remained independently mobile and required no assistive ambulatory devices. (Tr. 18). She continued to drive, taking her

daughter to school, caring for her child, and performing some household chores. (Tr. 16, 18, 40, 47-50, 279). She remained socially active, attending church and going out to eat at restaurants. (Tr. 16, 34, 53, 279-280). As previously noted, the treating and examining sources did not impose totally disabling functional restrictions. (Tr. 18). Under these circumstances, the court finds no error.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 26th day of July, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**